1

2

3

4

**UNITED STATES DISTRICT COURT**

5

**DISTRICT OF NEVADA**

6

\* \* \*

7

KELLY USANOVIC,

8

Plaintiff,

9

v.

Case No. 2:23-cv-01289-RFB-EJY

10

AMERICANA, L.L.C., *et al.*,

**ORDER**

11

Defendants.

12

13

Before the Court is Defendant Americana LLC's Motion to Dismiss and Motion to Strike.

14

ECF Nos. 60, 62. For the following reasons, Defendant's motion to dismiss is granted and Plaintiff

15

Kelly Usanovic's Second Amended Complaint is dismissed with prejudice. Defendant's motion

16

to strike is denied as moot.

17

I. **PROCEDURAL HISTORY**

18

Plaintiff Kelly Usanovic commenced this putative class action against Defendant Americana

19

L.L.C. by filing a Complaint on August 18, 2023. ECF No. 1. In the Complaint, Plaintiff brought

20

two claims for violation of the Telephone Consumer Protection Act ("TCPA") on behalf of herself

21

and two separately defined classes, the "Do Not Call Registry Class" and "Internal Do Not Call

22

Class." On October 6, 2023, Defendant filed a motion to dismiss and motion to strike the class

23

allegations within the Original Complaint. ECF Nos. 12, 13.

24

On October 30, 2023, Plaintiff filed her First Amended Complaint ("FAC"). ECF No. 23.

25

On November 13, Defendant again moved to dismiss and strike the class allegations in the FAC.

26

ECF Nos. 26, 28. On November 28, the parties submitted their discovery plan and scheduling

27

order. ECF No. 31. The same day, Magistrate Judge Youchah stayed discovery pending the

28

resolution of the motions to dismiss and motions to strike class allegations. ECF No. 33. On

1   December 18, Plaintiff voluntarily dismissed her claim on behalf of the "Internal Do Not Call

2   Class" without prejudice. ECF No. 34. Plaintiff sought to amend her FAC on February 12, 2024.

3   ECF No. 42. On April 24, 2024, Magistrate Judge Youchah issued an Order and Report and

4   Recommendation. ECF No. 54. Judge Youchah granted Plaintiff's motion to amend in part,

5   allowing Plaintiff to file a Second Amended Complaint that included her reasserted "Do Not Call

6   Registry Class" and new "Pre-Recorded No Consent Class" claims. However, Judge Youchah

7   denied the motion to amend as it related to Plaintiff's reasserted "Internal Do Not Call Class."

8       On May 9, 2024, Plaintiff filed her Second Amended Complaint ("SAC") which only

9   included claims on behalf of the "Do Not Call Registry Class[1]" and "Pre-Recorded No Consent

10  Class."[2] Defendant filed its responsive pleadings, including the instant motion to dismiss and a

11  motion to strike the class allegations from the SAC on May 15, 2024. ECF Nos. 60, 62. Defendant

12  also filed two requests for judicial notice. ECF Nos. 61, 69. These motions were fully briefed by

13  June 5, 2024. ECF Nos. 66-68, 70, 71. On May 28, 2024, the Court issued an Order accepting the

14  Report and Recommendation and denying the previous two motions to dismiss as moot. ECF No.

15  65. On February 5, the Court held a hearing on the pending motions. ECF Nos. 75, 76.

16      The Court's Order follows.

17  **II.    FACTUAL ALLEGATIONS**

18      The following facts are taken from the Second Amended Complaint.

19      The National Do Not Call Registry allows consumers to register their telephone numbers

20  and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47

21  C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the

22  registration is cancelled by the consumer or the telephone number is removed by the database

23  administrator." Id. Plaintiff Usanovic registered her cell phone number on the DNC on June 25,

24  [1] This class consists of "[a]ll persons in the United States who from four years prior to the filing of this
25  action through class certification (1) [Defendant Berkshire Hathaway HomeServices Nevada Properties] or
    agents on its behalf called on more than one time, (2) within any 12-month period, (3) where the person's
26  residential telephone number had been listed on the National Do Not Call Registry for at least thirty days,
    (4) for substantially the same reason Defendant called Plaintiff."
27  [2] This class consists of "[a]ll persons in the United States who from four years prior to the filing of this
    action through class certification (1) BHHS or agents on its behalf called on their cellular telephone number
28  (2) using an artificial or pre-recorded voice (3) for substantially the same reason Defendant called Plaintiff.

- 2 -

1    2005.

2         Defendant Americana LLC operates using the trade name Berkshire Hathaway

3    HomeServices Nevada Properties ("BHSS"). Defendant BHHS operates a full-service real estate

4    company that services consumers in buying/selling properties. Mark Stark is the CEO. Rick

5    Berube is the Vice President of Sales. BHHS contracts with independent contractor real estate

6    agents.

7         Defendant BHHS trains its real estate agents to place unsolicited calls to consumers who

8    previously listed a property with a different real estate brokerage, were unable to sell their home,

9    and the agent listing expired (known as "expired listings"). CEO Stark and Vice President of Sales

10   Berube regularly give training classes to their real estate agents instructing them to place cold calls

11   to consumers with expired listings. Defendant instructs the real estate agents on how to call (by

12   using one of the dialers Defendant recommends), who to call (by obtaining leads from the vendors

13   Defendant recommends), when to call (for multiple hours every day), and what to say (following

14   Defendant's scripts).

15        Defendant provides its agents with the "Book of Everything," which includes expired

16   listing scripts, how to role play these scripts, and even which dialer services to use. On the last

17   page, Defendant provides companies and website addresses for where its agents can purchase

18   numbers to call consumers. Among this list were companies like Landvoice, Mojo, RedX, and

19   Vulcan which were used by the agents who called the Plaintiff in this case. The phone numbers

20   that RedX, Landvoice, Vulcan7, and Mojo provide to real estate agents include numbers on the

21   DNC. Despite this fact, Stark and Berube regularly instruct their real estate agents to generate

22   business using RedX, Landvoice, Vulcan7, and Mojo. Neither the training videos nor the "Book

23   of Everything" contain any mention of the national Do Not Call registry, and that agents should

24   first check whether a phone number is registered with the DNC.

25        Plaintiff Usanovic had a property listed for sale using a real estate agent not affiliated with

26   BHHS. Plaintiff's property listing expired in February of 2023. As soon as it expired, Plaintiff

27   received unsolicited calls to her cell phone from real estate agents soliciting her to relist her

28   property with them. On February 14, 2023, Plaintiff received the following BHHS calls: A call at

8:20 AM, from BHHS agent Mladen Zoranovic; a call at 8:21 AM, from 702-458-8888, a phone number associated with Defendant BHHS (Plaintiff requested that her cell phone number be removed from the company call list); a call at 8:39 AM, from a phone number associated with BHHS agent Ingrid Wilson; a call at 3:56 PM, from a BHHS agent identified as Michael Owens; and a call at 5:41 PM, from a BHHS agent named Henry. She received more calls on February 15: a call at 8:02 AM, from BHHS agent John Williams (Plaintiff told Williams to remove her number from his calling list); a call at 9:16 AM from BHHS agent Vangie Genio; and two calls at 9:17 AM. On February 20, at 12:34 PM, she received a call from BHHS agent Tina Gibson. On April 17, at 9:30 AM, she received a call from a number at the Sahara Office, a BHHS facility. Plaintiff told the agent that her phone number is on the DNC and that she should not be calling her. On April 28, at 10:59 AM, she received a call from BHHS agent Jourdain Taylor-Jackson. Plaintiff told Jourdain that her phone number is on the DNC and that he should not be calling her. For most of the answered calls, the agent would identify that they are an agent from BHHS and inquire about the status of her expired property and whether she would like to relist it through their services. Numerous consumers have posted complaints online about unsolicited calls that they received from BHHS real estate agents, including calls placed to phone numbers that are registered on the DNC.

## III.    LEGAL STANDARD

An initial pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. ADT Sec. Servs., Inc., 706 F.3d 1017, 1019 (9th Cir. 2013).

To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must do more than assert "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . . ." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In other words, a claim will not be dismissed if it contains "sufficient factual matter, accepted as true, to state a claim to relief

that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Id. at 678. The Ninth Circuit, in elaborating on the pleading standard described in Twombly and Iqbal, has held that for a complaint to survive dismissal, the plaintiff must allege non-conclusory facts that, together with reasonable inferences from those facts, are "plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

## IV.    DISCUSSION

The Court now turns to the merits of Defendant's motion to dismiss. Plaintiff alleges that Defendant violated 47 USC § 227(c)(5) and 47 U.S.C. § 227(b)(1)(A)(iii) of the Telephone Consumer Protection Act. The parties do not dispute whether the agents violated the TCPA and its implementing regulations. Rather, the parties dispute whether Defendant can be held liable for the agents' calls.

For a call to fall under the TCPA, the caller must either (1) directly make the call, or (2) have an agency relationship with the person who made the call. See Thomas v. Taco Bell Corp., 582 Fed. Appx. 678, 679 (9th Cir. 2014) ("There are two potential theories of liability [for a TCPA violation]: (1) direct liability; and (2) vicarious liability."). Direct liability is inapplicable here as the parties do not dispute that the actual callers were various real estate agents, rather than Defendant. Therefore, Plaintiff must sufficiently allege that Defendant is vicariously liable for the calls at issue.

"[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." Gomez v. Campbell-Ewald Co., 768 F.3d 871, 878 (9th Cir. 2014), aff'd sub nom. Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 136 (2016) ("[U]nder federal common-law principles of agency, there is vicarious liability for TCPA violations."). "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Mavrix Photographs, LLC v. LiveJournal, Inc., 873 F.3d 1045, 1054 (9th Cir. 2017). To establish an agency relationship,

Plaintiff must show that BHHS "controlled or had the right to control" the real estate agents—specifically the "manner and means" of the calls conducted. Thomas, 582 Fed.Appx. at 679. The "essential ingredient" in determining whether an agency relationship exists is "the extent of control exercised by the employer." United States v. Bonds, 608 F.3d 495, 505 (9th Cir. 2010).

Plaintiffs have failed to allege sufficient facts to establish an agency relationship between Defendant and the callers. Defendant provides trainings to agents concerning how to make calls, including where to purchase phone numbers and dialers. Plaintiff has not alleged that the trainings are required or that the real estate agents must use the dialers and vendors that Defendant recommends. Further, Defendant does not direct Plaintiff how many calls to make, nor do the calls occur under the Defendant's supervision. See, e.g., Jones v. Royal Admin. Servs., 887 F.3d 443, 451 (9th Cir. 2018) ("However, Royal did not have the right to control the hours the telemarketers worked nor did it set quotas for the number of calls or sales the telemarketers had to make."); NLRB v. United Ins. Co. of Am., 390 U.S. 254, 258 (1968) (finding the fact that individuals "perform their work primarily away from the company's offices and fix their own hours of work and work days" showed the principal had less control and supported the conclusion that the agents were not employees).

Even if there were an agency relationship, Plaintiff has failed to allege facts sufficient to establish any of the three agency theories for TCPA liability, including actual authority, apparent authority, and ratification. See Jones, 887 F.3d at 453 n.3; Abante Rooter & Plumbing, Inc. v. Alarm.com Inc., Case No. 15-cv-06314-YGR, 2018 WL 3707283, at *3 (N.D. Cal. Aug. 3, 2018) ("A plaintiff can establish an agency relationship, and therefore vicarious liability under the TCPA, using the 'bedrock theories of agency,' actual authority, apparent authority, and ratification.").

### A.  Actual Authority

"Actual authority, 'arises through 'the principal's assent that the agent take action on the principal's behalf.'" Jones, 887 F.3d at 453 n.3 (quoting Restatement (Third) Of Agency § 3.01). "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Hartranft v. TVI, Inc., Case No. SACV

15-01081-CJC (DFMx), 2017 WL 11249764, at *2 (C.D. Cal. Mar. 9, 2017). Actual authority is limited to actions "specifically mentioned to be done in a written or oral communication" or "consistent with" a principal's "general statement of what the agent is supposed to do." Salyers v. Metro. Life Ins. Co., 871 F.3d 934, 940 (9th Cir. 2017); see also NLRB v. District Council of Iron Workers of the State of California and Vicinity, 124 F.3d 1094, 1098 (9th Cir. 1997).

Plaintiff presents evidence that Defendant hosts training sessions for the real estate agents and encourages cold calls to expired listings. However, Plaintiff provides no BHHS authorization or directive to the real estate agents instructing them to make calls to numbers on the NDNCR. See, e.g., Valdes v. Nationwide Real Est. Executives, Inc., No. SA-cv-2001734-DOCJDEX, 2021 WL 2134159, at *4 (C.D. Cal. Apr. 22, 2021) ("Plaintiff fails to proffer any evidence showing that [Defendant] directs its agents to make cold calls that violate the TCPA or that [Defendant] has any control over whom its agents call.").

### B.  Apparent Authority

"Apparent authority arises from the principal's manifestations to a third party that supplies a reasonable basis for that party to believe that the principal has authorized the alleged agent to do the act in question." NLRB v. District Council of Iron Workers of the State of California and Vicinity, 124 F.3d 1094, 1099 (9th Cir. 1997) (internal citations omitted). "Apparent authority cannot be established merely by showing that [the agent] claimed authority or purported to exercise it, but must be established by proof of something said or done by the [principal] on which [the third party] reasonably relied." Id. Such statements can include "direct statements to the third person, directions to the agent to tell something to the third person, or the granting of permission to the agent to perform acts and conduct negotiations under circumstances which create in him a reputation of authority in the area which the agent acts and negotiates." NLRB v. Donkin's Inn, Inc., 532 F.2d 138, 141 (9th Cir. 1976).

Plaintiff has failed to allege any statement from Defendant upon which she relied. In fact, she alleges no direct communication with Defendant. Instead, she alleges that the agents identified themselves as calling from BHHS, but this is insufficient to establish apparent authority. See, e.g., Rahimian v. Adriano, No. 220-cv-02189-GMN-VCF, 2022 WL 798371, at *5 (D. Nev. Mar. 16,

2022) ("Plaintiff claims that Defendant Adriano identified herself as calling 'from Century 21 Americana.'. . .  Plaintiff fails to plead sufficient facts demonstrating reasonable reliance."). She alleges no communication from Defendant stating that she could rely on the agents' statements, nor anything Defendant communicated to the agents that they had authority to act on behalf of BHHS. Finally, she does not allege any statements made by the real estate agents upon which she relied.

### C. Ratification

Ratification is "'the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority.'" Kristensen v. Credit Payment Servs. Inc., 879 F.3d 1010, 1014 (9th Cir. 2018) (quoting Restatement § 4.01(1)). There are two ways a principal might ratify a third party's acts: by a "knowing acceptance of the benefit" or through "willful ignorance." Henderson v. United Student Aid Funds, Inc., 918 F.3d 1068, 1073-74 (9th Cir. 2019) (citing Restatement § 4.01 cmt. d). To prove knowing acceptance, there must be "an objectively or externally observable indication . . . that the principal has exercised choice and has consented" to the acts of the purported agent. Id. (citing Restatement § 4.01 cmt. D). A principal that is "willfully ignorant" might not know the material facts but ratifies "with awareness that such knowledge was lacking." Id. (citing Restatement § 4.01 cmt. B).

There is no allegation that Defendant knew that the numbers provided by third-party vendors purportedly included numbers on the NDNCR. Plaintiffs do not allege that BHHS knew that the real estate agents were making calls that violated the TCPA. Plaintiffs do not even allege that the trainings, where Defendant recommended such companies, were required, or that agents who later called Plaintiff attended the trainings. Additionally, Plaintiff has not alleged any benefit that Defendant received as a result of the calls to support a finding that they knowingly accepted the benefit of the real estate agents' allegedly unlawful acts.

### D. Leave to Amend

 "Leave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" Knappenberger v. City of Phoenix, 566 F.3d 936, 942 (9th Cir. 2009) (quoting Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000)

(en banc)).  Here, Plaintiff was given an opportunity to amend her complaint and knew – from two prior motions to dismiss – what arguments Defendant would raise. Yet, her SAC suffers from the same defects as the Complaint and First Amended Complaint, since she continues to fail to allege that an agency relationship exists, or facts to support such a finding. Instead, Plaintiff continues to broadly allege that Defendant is "directing, apparently authorizing, ratifying, and/or negligently supervising their agents" without sufficiently alleging any of the theories supporting a finding of vicarious liability. Therefore, both of Plaintiff's claims are dismissed without leave to amend.

**V.    CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that Defendant Americana LLC's Motion to Dismiss, (ECF No. 60), is **GRANTED**. Plaintiff Kelly Usanovic's Second Amended Complaint is dismissed with prejudice.

**IT IS FURTHER ORDERED** that Defendant Americana LLC's Motion to Strike, (ECF No. 62), is **DENIED** as moot.

The Clerk of Court is instructed to close this case and enter judgment accordingly.

**DATED:** March 31, 2025.

_____

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**